**IN THE UNITED STATES**
**DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

NOVOGENE CO., LTD.

Building 301, Room 101, No. 10
Jiuxianqiao North Road, Chaoyang
District, Beijing, 100015, China

NOVOGENE CORPORATION INC.

2921 Stockton Blvd., Suite 1810,
Sacramento, California 95817

*Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF DEFENSE,

1400 Defense Pentagon
Washington, D.C. 20301

PETER HEGSETH, in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF DEFENSE,

1000 Defense Pentagon
Washington, D.C. 20301

MICHAEL CADENAZZI, in his official capacity as ASSISTANT SECRETARY OF DEFENSE FOR INDUSTRIAL BASE POLICY,

3050 Defense Pentagon
Washington, D.C. 20301

*Defendants*.

Civil Action No. 1:26-cv-________

**COMPLAINT**

Plaintiffs Novogene Co., Ltd. ("Novogene Co.") and its U.S. subsidiary, Novogene Corporation Inc. ("Novogene USA") (collectively, "Novogene"), bring this action against Defendants U.S. Department of Defense ("the Department"), Peter Hegseth, in his official capacity as Secretary of Defense, and Michael Cadenazzi, in his official capacity as Assistant Secretary of Defense for Industrial Base Policy, and allege as follows:

## INTRODUCTION

1. Novogene Co. was founded in 2011 and is a global provider of genetic technology products and services. It serves more than 8,000 clients worldwide, including over 4,800 research institutions, pharmaceutical companies, and U.S.-based universities. Novogene USA employs approximately 180 people at its Sacramento office and at sequencing centers in Sacramento, California, and Beaverton, Oregon. Novogene does not design, develop, or market products for military use.

2. This action challenges the unlawful designation of Novogene Co. as a "Chinese military company" ("CMC") pursuant to Section 1260H(a) of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 ("Section 1260H" and "FY2021 NDAA").[1] The June 8, 2026, designation of Novogene Co. as a CMC (the "Designation") has caused Novogene serious, irreparable, and unwarranted economic, reputational, and other harm.

3. On June 10, 2026, Novogene emailed the Department's established Section 1260H List electronic mailbox and requested the administrative record supporting the Designation. On July 1, 2026, Novogene received a summary report setting forth the basis for the Designation (the

[1] Pub. L. No. 116-283, § 1260H, 134 Stat. 3965 (2021) (as amended by National Defense Authorization Act for Fiscal Year 2025, Pub. L. No. 118–159, § 1346, 138 Stat. 2123 (2024)).

"Report"), dated May 14, 2026. The Department did not provide Novogene the full administrative record as Novogene requested.

4. The Report rests the Designation on three attenuated theories: (1) that Novogene Co. is "indirectly owned by" the State-Owned Assets Supervision and Administration Commission ("SASAC") because a company in which SASAC owns an interest holds a small position in Novogene Co.; (2) that Novogene Co. is "indirectly affiliated with" the Ministry of Industry and Information Technology ("MIIT") because one of its subsidiaries was recognized as a "Little Giant" in 2023; and (3) that Novogene Co. is "indirectly affiliated with" the People's Liberation Army ("PLA") because of a single research contract with a medical university.

5. None of these theories is sufficient as a matter of law. Novogene Co. is not "owned" by SASAC under any reasonable definition of the term. As of October 7, 2026, State Development & Investment Corp., Ltd. ("SDIC"), the SASAC-owned entity identified in the Report, held approximately 1.02% of Novogene Co.'s equity, and its interest was declining. Moreover, the Report identifies no evidence that SASAC controls Novogene, and its only suggestion of "control"—that Chinese companies are generally required to comply with government directives—is not only wrong, but applies equally to every company in China.

6. The MIIT theory fares no better. The Little Giant recognition went to a subsidiary of Novogene; it was one of 59 companies that received the Little Giant award from the Tianjin Municipal Bureau of Industry and Information Technology on the same day, and one of hundreds of companies that receive the award each year. The award expired on June 30, 2026. Novogene Co. itself did not receive a Little Giant award or any benefit from the award. The Report describes the program's benefits as "guaranteed," but its own source says only that such benefits "typically"

follow. And to tie Novogene Co. to China's military-civil fusion doctrine, the Report erroneously cites a document about an entirely different company.

7. The PLA theory rests on one publicly bid November 2024 contract with the Third Medical Military University for "semen protein profile testing" in a population cohort, worth roughly $21,000 and representing about 0.0075% of Novogene Co.'s 2024 revenue. The services are civilian population-cohort research of the type Novogene routinely provides to research institutions, particularly universities and hospitals. A single, small civilian research contract does not establish a present, "close" association with the PLA.

8. In enjoining a similar Section 1260H designation, Chief Judge Boasberg held that the Department must "accurately characterize" a company's role and "explain why the resulting relationship is sufficiently close." *WuXi AppTec Co. v. U.S. Dep't of Def.*, 2026 WL 2279624, at *9 (D.D.C. Aug. 7, 2026). The Report does neither. Most of these errors could (and should) have been caught had the Department provided Novogene with notice and a meaningful opportunity to respond before the Designation.

9. Yet prior to the Designation, the Department did not formally notify Novogene that it was considering including the company on the Section 1260H List,[2] did not disclose the materials on which it intended to rely, and gave Novogene no opportunity to respond before the Designation became final. That was plainly insufficient. On August 18, 2026, the D.C. Circuit held that the Department must provide companies with adequate notice and a meaningful opportunity to contest a designation before placing them on the 1260H List. *See generally Hesai Tech. Co. v.*

---

[2] The Section 1260H List is sometimes referred to as the Chinese Military Companies List ("CMC List" or "1260H List" or "the List"). Those terms will be used interchangeably herein.

*U.S. Dep't of Def.*, 186 F.4th 873 (D.C. Cir. 2026). Novogene received neither before it was designated on June 8, 2026.

10. On October 8, 2026, Novogene submitted a formal removal request—supported by a declaration from Novogene's CEO—which identified the clear and incontrovertible errors in the Report and the Department's failure to provide Novogene with notice of its designation basis and a meaningful opportunity to be heard prior to listing the company as a CMC. Defendants have yet to provide a substantive response.

11. As discussed herein, the Defendants' conduct was unlawful, and the Court should grant relief for three reasons. *First*, by failing to provide Novogene with notice of, or an opportunity to meaningfully challenge, the basis for the Designation, Defendants deprived Novogene of its property and liberty rights without due process of law, in violation of the Fifth Amendment of the U.S. Constitution and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *Second*, the Designation is arbitrary and capricious, unsupported by substantial evidence, and in excess of statutory authority in violation of the APA. *Third*, Defendants failed to observe the procedures Section 1260H requires. Plaintiffs therefore seek declaratory and injunctive relief setting aside the Designation, requiring Novogene's immediate removal from the 1260H List, and preventing Defendants from enforcing or relying on the unlawful Designation.

12. Plaintiffs also intend to move for a preliminary injunction to prevent the immediate and irreparable harm resulting from Defendants' unlawful Designation.

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the United States Constitution and the laws of the United States, including the APA, 5 U.S.C. § 551 *et seq.*

14. The Court has authority to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; 5 U.S.C. § 702; and the Court's inherent equitable powers.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1) because Defendants are agencies of the United States and officers or employees acting in their official capacities, and because a substantial part of the events or omissions giving rise to this action occurred in this District.

## PARTIES

16. Plaintiff Novogene Co. is an independent company that is traded on the Shanghai Stock Exchange. Novogene Co. operates in 90 countries and regions across six continents worldwide, and is currently headquartered in Beijing, China.

17. Plaintiff Novogene USA is located in Sacramento, California and incorporated in Delaware. Novogene USA operates two sequencing centers in Sacramento, California and Beaverton, Oregon, and has approximately 180 employees in the United States.

18. Defendant U.S. Department of Defense is a Department of the Executive Branch of the United States Government and an agency within the meaning of 5 U.S.C. § 551(1). On June 8, 2026, the Department of Defense published a list designating Novogene as a CMC under Section 1260H.

19. Defendant Peter Hegseth is the Secretary of Defense. In this role, he oversees the Office of the Assistant Secretary of Defense for Industrial Base Policy. He is sued in his official capacity.

20. Defendant Michael Cadenazzi is the Assistant Secretary of Defense for Industrial Base Policy. In this role, he manages the process for the Department's placement of entities on the

Section 1260H List and the process for the Department's removal of entities from the Section 1260H List. He is sued in his official capacity.

## LEGAL FRAMEWORK AND BACKGROUND

### A. Section 1260H Requires the Secretary of Defense to Identify and Publish a List of CMCs

21. The Department's authority to designate an entity as a CMC derives from Section 1260H of the National Defense Authorization Act for Fiscal Year 2021. Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965 (2021), as amended by National Defense Authorization Act for Fiscal Year 2025, Pub. L. No. 118-159, Div. A, Title XIII, § 1346, 138 Stat. 1773, 2123-26 (2024).

22. Section 1260H directs the Secretary of Defense to identify Chinese military companies that operate directly or indirectly in the United States or any of its territories and possessions. *See* FY2021 NDAA § 1260H(a). Section 1260H defines "Chinese military company" as any entity that is "(i)(I) directly or indirectly owned by, controlled by, or beneficially owned by, affiliated with, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army, Chinese military and paramilitary elements, security forces, police, law enforcement, border control, the People's Armed Police, the Ministry of State Security (MSS), or any other organization subordinate to the Central Military Commission of the Chinese Communist Party, the Chinese Ministry of Industry and Information Technology (MIIT), the State-Owned Assets Supervision and Administration Commission of the State Council (SASAC), or the State Administration of Science, Technology, and Industry for National Defense (SASTIND)" or "(i)(II) identified as a military-civil fusion contributor to the Chinese defense industrial base;" and "(ii) engaged in providing commercial services, manufacturing, producing, or exporting." *See* FY2021 NDAA § 1260H(g)(2)(B).

23. The term "affiliated with" is defined as "in close formal or informal association." *Id.* § 1260H(g)(1).

24. Although the 2024 amendments define "affiliated with" as "in close formal or informal association," the word "close" must be given operative content. Read without a limiting principle, "affiliated with" would sweep in virtually any commercial, contractual, or regulatory contact between a company and a covered Chinese government agency. Courts in this District have rejected such readings. *See Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 187 (D.D.C. 2021) (if the government's "preferred, extremely broad definition for 'affiliated with' is adopted, . . . it would have almost no limiting principal").

25. Construing the predecessor statute, Section 1237, a court in this District held that "affiliated with" should be given its plain and common meaning: "a company effectively controlled by another or associated with others under common ownership or control." *Xiaomi Corp. v. Dep't of Def.*, No. 21-cv-280 (RC), 2021 WL 950144, at *7 (D.D.C. Mar. 12, 2021). The Department's own regulations likewise define "affiliate" in terms of control. *See* 32 C.F.R. § 117.3 ("Affiliate means each entity that directly or indirectly controls, is directly or indirectly controlled by, or is under common control with, the ultimate parent entity"); 32 C.F.R. § 232.3 ("Affiliate means any person that controls, is controlled by, or is under common control with another person.").

26. The amended statutory definition does not displace these principles; it is consistent with them. An association is "close" within the meaning of Section 1260H(g)(1) only where the covered agency controls or directs the entity or where the relationship is comparably close. Giving the word "close" that content is faithful to the statutory text, consistent with *Luokung* and *Xiaomi* and with the Department's longstanding regulatory understanding of "affiliate," and avoids a

reading under which routine commercial relationships would render a company a "Chinese military company."

27. The term "People's Liberation Army" ("PLA") is further defined as "the land, naval, and air military services, the People's Armed Police, the Strategic Support Force, the Rocket Force, and any other related security element within the Government of China or the Chinese Communist Party that the Secretary determines is appropriate." FY 2021 NDAA § 1260H(g)(5).

28. The Secretary of Defense is required to identify Chinese Military Companies "based on the most recent information available." *Id.* § 1260H(a).

29. The Secretary is required to provide a report to Congress, concurrently published in the Federal Register, of all entities he has identified as Chinese Military Companies on an annual basis. *Id.* § 1260H(b)(1)-(2). The Secretary is further required to make additions or deletions to the "most recent list submitted [to Congress] . . . [not less frequently than annually] based on the most recent information available." *Id.* § 1260H(b)(3). The Secretary is further required to establish "reasonable procedures . . . to implement the provision of this section, including . . . procedures for removal of entities from the list described in subsection (b)(1)." *Id.* § 1260H(e).

**B. The Department's Reconsideration Process**

30. On January 7, 2025, the Department announced a reconsideration process in which entities already included in the Section 1260H List may email the Department to seek reconsideration.

31. Requests for reconsideration must include: "(1) The listed entity's name and mailing address (including email address) and an authorized representative's name and mailing address (including email address); and (2) A statement indicating the entity's intent to request reconsideration of the Department's determination, including a detailed description with

supporting evidence of why the listed entity should be removed from the 1260H List." Notice of Availability of Designation of Chinese Military Companies, 90 Fed. Reg. 1105-06 (Jan. 7, 2025).

32. According to the announcement, the reconsideration process also allows entities to include "additional information such as arguments and evidence that establishes that an insufficient basis exists for the listing or that the circumstances resulting in the listing no longer apply." *Id.* While the announcement does not provide a timeline for reconsideration, under Section 1260H(e), the Department's reconsideration procedures must be "reasonable," which would include acting on requests in a reasonable time and manner.

33. In addition to this requirement, subsection (b)(3) of Section 1260H separately requires the Department to revise the List of entities that it provides to Congress based on the most recent information available—irrespective of whether a reconsideration request has been made—no less than annually.

**C. Purpose of the Section 1260H List**

34. Various legislators have stated that the Section 1260H List furthers the twin aims of: (1) monitoring companies allegedly working with China's military, and (2) preventing U.S. industry and supply chains from both funding those companies and relying on those companies.[3]

35. Senator Kevin Cramer, who sits on the Senate Armed Services Committee, stated publicly that the intent is to make American and international companies aware of which

---

[3] *Combatting the Generational Challenge of CCP Aggression: Hearing Before the H. Comm. on Foreign Affs.*, 118th Cong. 2 (2023) (statement of Michael McCaul, Chairman, H. Comm. Foreign Affairs) ("[T]hese companies are military companies for the CCP. And both are listed on the entities list. If BIS continues to mindlessly greenlight sensitive technology sales, the CCP has proven they will use our own inventions against us.").

companies are CMCs so they will "strategically decouple"—*i.e.*, stop doing business with them.[4]

36. Representative Andy Barr, a member of the Subcommittee on National Security, Illicit Finance, and International Financial Institutions, stated during a hearing with the House Foreign Affairs Committee that the purpose of the Section 1260H List (alongside the Non-SDN Chinese Military-Industrial Complex Companies List) is "to prevent American investors from financing entities tied to the CCP[,] or these Chinese military industrial complex firms that are still included in emerging growth index funds either on U.S. exchanges or foreign stock exchanges or even through private equity or credit investments[.]"[5]

37. On September 29, 2020 (three months before the enactment of the FY2021 NDAA), House Republicans published the "China Task Force Report."[6] The report called for "[c]utting off material support of CCP military industrial base companies, including divestment from companies with ties to the CCP military."[7]

38. On December 18, 2025, several members of Congress sent a letter to Secretary Hegseth seeking the inclusion of additional companies on the Section 1260H List. The letter explained that listing entities on the Section 1260H List would "directly support Congress' intent that U.S. taxpayer funds not underwrite PRC military-industrial and internal-security or

[4] Kevin Cramer, *Senator Cramer Discusses Border Security, Threat of TikTok, Inflation on Fox Business*, KEVIN CRAMER U.S. SENATOR FOR NORTH DAKOTA (Mar. 12, 2024), https://www.cramer.senate.gov/news/press-releases/senator-cramer-discusses-border-security-threat-of-tiktok-inflation-on-fox-business (last accessed Nov. 2, 2026).

[5] *Combatting the Generational Challenge of CCP Aggression: Hearing Before the H. Comm. on Foreign Affs.*, 118th Cong. 57-58 (2023) (statement of Rep. Andy Barr).

[6] Michael McCaul, Chairman, U.S. House of Representatives, 116th Cong., *China Task Force Rep.* (2020), https://foreignaffairs.house.gov/news/blog/china-task-force-report (last accessed Nov. 2, 2026).

[7] *Id.* at 8.

intelligence capabilities."[8]

**D. Ramifications of the Designation**

39. Section 1260H imposes serious consequences for entities included on the CMC List.

40. The 1260H List is intended, at least in part, to "nam[e] and sham[e]"[9] the listed entities to put public pressure on these entities and all those who do business with them. *See WuXi AppTec*, 2026 WL 2279624, at *1 ("A scarlet letter sends a clear message: keep away.").

41. Moreover, Section 805 of the National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, 137 Stat. 136 (2023) ("FY2024 NDAA") contains two punitive prohibitions targeting entities included on the Section 1260H List.[10] *First*, under Section 805(a)(1)(A), the Secretary of Defense may not "enter into, renew, or extend a contract for the procurement of goods, services, or technology" with an entity identified on the Section 1260H List, or an entity subject to the control of an entity identified on the Section 1260H List. *See* FY2024 NDAA § 805(a)(1)(A). This prohibition took effect on June 30, 2026. *Id.* § 805(b). *Second*, under Section 805(a)(1)(B), the Secretary of Defense may not "enter into, renew, or extend

[8] Letter from Members of Congress to Pete Hegseth, Secretary of Defense 1 (Dec. 18, 2025), https://chinaselectcommittee.house.gov/sites/evo-subsites/selectcommitteeontheccp.house.gov/files/evo-media-document/12.18.25-letter-to-dow-1260h-additions.pdf (last accessed Nov. 2, 2026).

[9] Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4, 2021) ("Section 1260H focuses on strengthening the 'naming and shaming' foundation laid by Section 1237."), https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congress-incorporates-defense-contributors (last accessed Nov. 2, 2026).

[10] To implement these prohibitions, Section 805 directs the Department of Defense to amend the Defense Federal Acquisition Regulation Supplement ("DFARS") no later than one year after the enactment of FY2024 NDAA (*i.e.*, by Dec. 23, 2024) to implement prohibition (1)(A), and to amend the DFARS no later than 545 days after the enactment of FY2024 NDAA (*i.e.*, by June 19, 2025) to implement prohibition (1)(B). *See* FY2024 NDAA § 805(a)(4).

a contract for the procurement of goods or services that include goods or services *produced or developed*" by an entity identified on the Section 1260H List, or an entity subject to the control of an entity identified on the Section 1260H List. *Id.* § 805(a)(1)(B) (emphasis added). This prohibition takes effect on June 30, 2027, *id.* § 805(b), and would apply not only to Novogene but also to any entity that relies on Novogene's products and/or services.

42. Further, Section 536 of the Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138 Stat. 460 (2024), states that "[n]o Federal funds made available to the Department of Homeland Security may be used to enter into a procurement contract, memorandum of understanding, or cooperative agreement with, or make a grant to, or provide a loan or guarantee to, any entity identified under [S]ection 1260H . . . or any subsidiary of such entity."

43. On March 21, 2024, during a hearing of the House Foreign Affairs Committee, then-Under Secretary of Commerce for Industry and Security Alan Estevez noted that the Bureau of Industry and Security ("BIS") generally has no interest in issuing licenses to export items to entities on the Section 1260H List, agreeing with sentiments raised by a member of Congress during questioning.[11]

44. Inclusion on the Section 1260H List is also a predicate for designation as a "biotechnology company of concern" under the National Defense Authorization Act for Fiscal Year 2026, otherwise known as the BIOSECURE Act. Pub. L. No. 119-60, § 851(f)(1), 139 Stat. 718, 984 (2025). Once effective, the BIOSECURE Act will substantially restrict federal agencies

---

[11] *Countering China on the World Stage: Empowering American Businesses and Denying Chinese Military Our Technology: Hearing Before the H. Comm. on Foreign Affs.*, 118th Cong. (2024) (statement of Alan Estevez, Sec'y Com. for Indus. and Sec.) (confirming he was "really [not] interested in issuing licenses to do business with [CMC]s."), https://foreignaffairs.house.gov/committee-activity/hearings/countering-china-the-world-stage-empowering-american-businesses-and-denying-chinese-military-our-technology (last accessed Nov. 2, 2026).

from procuring or even facilitating the procurement of services or equipment, directly or indirectly, from "biotechnology companies of concern." *See id.* § 2(a).

## FACTUAL ALLEGATIONS

### A. Novogene's Business and U.S. Presence

45. Novogene Co. was incorporated in March 2011 in Beijing, China. Novogene designs and develops cutting-edge molecular biology technologies and high-performance computing applications in life science research and human health, striving to become a world-leading provider of genetic-technology products and services.

46. On April 13, 2021, Novogene Co. listed on the Shanghai Stock Exchange Science and Technology Innovation Board, also known as the "STAR Market."

47. Novogene's business covers three major segments: basic life-science research, medical research and technology, and sequencing-platform services. The company delivers one-stop multi-omics solutions spanning genomics, transcriptomics, single-cell sequencing, spatial transcriptomics, proteomics, and metabolomics.

48. Novogene is headquartered in Beijing and operates laboratories and experimental bases in Beijing, Tianjin, Guangzhou, Shanghai, the United States, the United Kingdom, Germany, Singapore, Thailand, South Korea, and Japan.

49. Novogene's business reaches approximately 90 countries and regions across six continents worldwide, serving top domestic and international research institutions, including U.S.-based universities.

50. Novogene has more than 8,000 clients, consisting of over 4,800 research institutes and universities, more than 800 hospitals, and over 2,400 pharmaceutical and agricultural enterprises.

51. Novogene does not design, develop, or manufacture products for military use, and it holds no military production licenses or certifications to supply military-grade products. It is not owned or controlled by the People's Liberation Army or any other Chinese military organization.

52. Novogene Co.'s United States subsidiary, Novogene USA, is incorporated in Delaware and located at 2921 Stockton Blvd., Suite 1810, Sacramento, CA 95817.

53. Novogene USA currently operates two sequencing centers in the United States, located at 9730 SW Nimbus Ave., Bldg. 15, Beaverton, Oregon 97008 and 2921 Stockton Blvd., Suite 1810, Sacramento, California 95817, respectively.

54. The corporate purpose of Novogene USA is to provide genomic sequencing and related laboratory services to customers in the United States.

55. Novogene USA has approximately 180 employees in the United States.

**B. The Department Incorrectly Designates Novogene as a CMC for the First Time Without Notice or an Opportunity to Be Heard**

56. On February 13, 2026, the Department released and quickly withdrew an updated Section 1260H List. That list included "Novogene Company Limited," despite no entity in the Novogene corporate group having that name. The publication stated that Novogene Company Limited was "indirectly owned by SASAC and [was] indirectly affiliated with MIIT and the PLA."

57. On information and belief, and as later reported in the media, the withdrawal of the list was done at the insistence of the White House given, among other things, the forthcoming trade summit between the United States and China in May 2026. Following the White House's

backpedaling, officials responsible for updating the list wanted to wait for the "dust to settle[]" before publishing a new list.[12]

58. After the February 2026 1260H List publication, Novogene sought clarification from the Department regarding the withdrawn listing. On March 9, 2026, Novogene emailed the Department requesting any additional information, clarification, or evidence underlying the inclusion of "Novogene Company Limited" and explaining that its internal review had identified no information supporting the stated basis for the listing. On March 10, the Department sent an email that did not define "Novogene Company Limited" but informed Novogene that the February list "may require updates." On March 12, Novogene again emailed the Department, reiterating its request for evidence supporting the listing so that it could conduct additional internal review.

59. In April 2026, representatives of Novogene reiterated Novogene's request for any information, clarification, or evidence underlying the Department's determination. Novogene again asked the Department to identify which legal entity it intended to list, explain the basis for the listing, and specify any responsive steps Novogene should take.

60. The Department did not provide the evidence or reasoning underlying the proposed 1260H listing. Instead, on May 12, 2026, the Department reiterated its March 10 message to Novogene that the February list "may require updates," that "a listing decision has not been made and evaluations are ongoing," and that it would review any information Novogene wished to submit.

[12] Kate O'Keeffe, *Pentagon's Botched Blacklist Highlights Frail Trump-Xi Truce,* Bloomberg (May 6, 2026), https://www.bloomberg.com/news/features/2026-05-06/trump-administration-s-pentagon-blacklist-misstep-roils-us-china-tech-ties (last accessed Nov. 2, 2026).

61. On June 8, 2026, the Department released a new Section 1260H List, which included Novogene Co.[13]

62. Novogene had not been included on any prior, official version of the Section 1260H List and, aside from the Department's withdrawn February 2026 publication, had received no indication from the Department that a listing decision had been made. The Department did not share the evidence or reasoning underlying its proposed decision, did not provide Novogene the unclassified materials on which it intended to rely, and did not afford Novogene a meaningful opportunity to respond before finalizing the Designation.

63. Novogene first obtained the Report, dated May 14, 2026 (*i.e.*, as the Trump-Xi summit was ending, and two days after the Department represented to Novogene that no listing decision had been made), on July 1, 2026. The Report sets out three grounds for the Designation. To date, the Department has not produced the full administrative record as Novogene had requested on June 10, 2026.

64. The Report is replete with a wide range of factual and legal errors. Most of the errors could have (and should have) been caught had the Department done a reasonable investigation. Moreover, the Department would have been made aware of these errors had it provided Novogene with adequate notice and a meaningful opportunity to contest a designation before being placed on the 1260H List.

65. The Report rests the Designation on three theories, asserting that Novogene Co. is: (1) "indirectly owned by SASAC of the State Council because a SASAC-owned state-owned enterprise (SOE) has an ownership interest in the company;" (2) "indirectly affiliated with MIIT

---

[13] Notice of Availability of Designation of Chinese Military Companies, 91 Fed. Reg. 35189 (June 10, 2026).

through MIIT's designation of a Novogene subsidiary as a 'Little Giant;'" and (3) "indirectly affiliated with PLA through a contract with a PLA-affiliated university hospital." (Report at 5-7).

66. *First*, the Department claims that Novogene Co. is "indirectly owned by SASAC" because SDIC, a SASAC-controlled, state-owned enterprise, indirectly "holds a 4.48% equity stake in Novogene through its private equity and venture capital arm, SDIC Innovation Investment Management." *Id.* at 5. According to the Report, SASAC of the State Council is SDIC's majority owner, and SDIC Group is "controlled by the Chinese central government and SASAC of the State Council." *Id.* From there, the Report reasons that because Chinese "[c]ompanies are generally subject to the control of the Chinese government, then companies owned by SASAC or SASAC-owned SOEs are undoubtedly subject to an equal or greater measure of control." *Id.* The Report also asserts that "[c]ompanies are generally required under Chinese national law to cooperate with the Chinese government." *Id.* at 6. As of October 7, 2026, however, SDIC held approximately 1.02% of Novogene Co.'s equity, and its interest was declining. Novogene is not owned or controlled by SDIC, SASAC, or any other Chinese governmental entity, and neither SDIC nor SASAC exercises control over Novogene.

67. *Second*, the Department claims that Novogene Co. is "indirectly affiliated with MIIT" by pointing to a 2023 "Little Giant" designation conferred on one of Novogene Co.'s subsidiaries. *Id.* at 7.

68. Notably, the sources cited in the Report do not support any claim that Novogene Co. or its subsidiary currently receives preferential treatment or benefits from MIIT as a result of the designation. The Report claims that Little Giant companies are "guaranteed subsidies, tax cuts, and other grants" from central or provincial authorities. *Id.* at 7. The source it cites, however, says only that such benefits "typically" accompany the designation, and does not say that any particular

benefit is guaranteed or was ever received.[14]

69. The Report also states that, "[t]hrough its subsidiary's designation, Novogene receives preferential treatment and fits into the wider military-civil fusion doctrine that China emphasizes." (Report at 7). The source erroneously cited for that statement concerns an entirely different company, Autel Robotics; it neither mentions Novogene nor links the Little Giant program to military-civil fusion.[15]

70. Finally, relying on the three-year funding period associated with the "Little Giant" designation, the Report concludes that "Novogene is currently receiving assistance from the Government of China for its subsidiary's designation." (Report at 7). The Little Giant award lapsed in June 2026, and neither Novogene nor its subsidiary has sought to extend or renew it.

71. *Third*, the Department claims that Novogene Co. is "indirectly affiliated with" the PLA by citing to one contract, executed in November 2024, between Novogene Co. and the Third Military Medical University (the "Army Medical University") for a project titled "Semen protein profile testing in a population cohort," which the Report values at 150,000 RMB (roughly $21,000). *Id.* at 7. It describes the Army Medical University as the "primary training hospital for PLA, PLA Rocket Force, and Armed Police Force medical officers, civilian personnel, and medical sergeants for the entire Chinese armed forces." *Id.*

---

[14] BLOOMBERG, *China's 'Little Giants' Are Its Latest Weapon in the U.S. Tech War* (Jan. 23, 2022), https://www.bloomberg.com/news/articles/2022-01-23/china-us-xi-jinping-backs-new-generation-of-startups-in-tech-war (last accessed Nov. 2, 2026).

[15] *See* Dr. James C Mulvenon Website, AUTEL ROBOTICS, https://www.jamescmulvenon.com/wp-content/uploads/2023/10/Autel-Robotics.pdf (last accessed Nov. 2, 2026).

### C. Novogene's Removal Request

72. On October 8, 2026, Novogene formally requested that the Department immediately remove it from the 1260H List, explaining that it does not satisfy the statutory criteria for designation under Section 1260H.

73. Novogene's request, which was accompanied by a declaration from its CEO, Ruiqiang Li, identified errors in the Report and explained that the Department had designated Novogene without the process the Due Process Clause requires.

74. Novogene advised the Department that the Report's 4.48% figure is outdated and incorrect. SDIC now holds only approximately 1.02% of Novogene Co.'s equity, that stake is decreasing, and neither SDIC nor SASAC controls Novogene.

75. Novogene explained that the Little Giant designation went to a subsidiary rather than to Novogene Co. itself, was one of 59 Little Giant designations conferred by the Tianjin Municipal Bureau of Industry and Information Technology on July 14, 2023, through an application process open to all companies, was granted more than three years ago, and lapsed on June 30, 2026. Novogene further explained that the Report identifies no evidence that Novogene obtained any material benefit from the designation.

76. Novogene explained that the Army Medical University contract was a single award won through open bidding in 2024, accounted for only about 0.0075% of Novogene Co.'s total 2024 revenue, and questioned how a contract for "semen protein profile testing" bears any connection to the statutory purpose of Section 1260H.

77. The Department finalized the Designation without considering this information, not because it was unavailable, but because the Department denied Novogene any opportunity to provide it, in contravention of the APA and fundamental due process principles.

### D. Novogene Is Immediately and Irreparably Harmed as a Direct Result of the Erroneous Designation

78. Since being designated as a CMC on June 8, 2026, Novogene's business has been significantly impacted. Many clients who receive funding from the National Institutes of Health ("NIH") or other federal agencies have terminated cooperation or are considering suspending their partnerships with Novogene. *See WuXi AppTec*, 2026 WL 2279624, at *12 (crediting the present harm of "the present conduct of counterparties reacting to a designation that exists now.") (emphasis in original).

79. As of mid-October 2026, the Designation has impacted many of Novogene's United States customers. For example, many customers have imposed either a total or partial ban on business with Novogene, and others have expressed concern regarding Novogene's status. The compliance and procurement departments of these customers have attributed their actions to Novogene's inclusion on the Section 1260H list, to Department of Defense funding, or to Novogene's "affiliation with Chinese companies." Restrictions began within weeks of the Designation, and additional customers have imposed restrictions every month since, causing Novogene to lose millions of dollars in revenue.

80. These harms continue to mount, and Novogene projects that the affected accounts will cost the company millions of dollars in U.S. revenue in 2026.

81. The Designation also exposes Novogene to further consequences. A Section 1260H designation may lead to the designated entity's addition to the Department of the Treasury's Non-SDN Chinese Military-Industrial Complex Companies List, which prohibits U.S. persons from purchasing or selling publicly traded securities of listed entities. *See* Exec. Order No. 14032, 86 Fed. Reg. 30145 (June 3, 2021). Such a listing would cut Novogene off from U.S. investors.

82. States also rely on the Section 1260H List to impose their own restrictions. For example, Utah prohibits any entity on the 1260H List from acquiring an interest in land in the state, *see* Utah Code §§ 63L-13-101 to -201, Texas prohibits public retirement systems from investing in entities affiliated with China, including entities on the 1260H List, *see* Tex. Gov't Code Ann. §§ 809A.001, 809A.057, and Nebraska has subjected listed entities to heightened scrutiny for lobbying activities, *see* 2026 Neb. Laws L.B. 904. In addition, the Department may not contract with any entity that retains a lobbyist who simultaneously represents a listed entity. 10 U.S.C. § 4663(a), (d)(1).

83. Most significantly, the Designation automatically renders Novogene a "biotechnology company of concern" under the BIOSECURE Act. *See* Pub. L. No. 119-60, § 851(f)(1). That status bars federal agencies not only from procuring biotechnology equipment or services from Novogene, but also from entering into contracts with, or extending grants or loans to, entities that use biotechnology equipment or services produced or provided by a biotechnology company of concern.

84. The BIOSECURE Act's grant restrictions make the harm to Novogene's academic and research business even more concrete. Many of Novogene's U.S. customers, including U.S.-based universities and research institutes, conduct research funded by NIH and other federal agencies. Because federal grant funds may not support the use of biotechnology services provided by a biotechnology company of concern, these customers risk losing federal funding if they continue to use Novogene's services. That is why, as alleged above, many federally funded clients have terminated or are considering suspending their relationships with Novogene.

85. The Designation's effects do not stop at the United States border: by publicly branding Novogene a "Chinese military company," the Department has damaged Novogene's

reputation with research institutions, hospitals, and commercial partners in the approximately 90 countries and regions that Novogene serves, many of which look to U.S. government determinations when evaluating vendors.

86. The Designation also harms third parties. It threatens the jobs of Novogene USA's approximately 180 U.S. employees in California and Oregon and disrupts ongoing research at U.S. universities, research institutes, and hospitals that rely on Novogene USA's sequencing services.

87. The Designation has also significantly disrupted Novogene's U.S. workforce. Following the Designation, certain U.S.-based employees resigned after expressing concerns related to the Designation and its impact on the business. In addition, as customer relationships and business opportunities have been adversely affected by the Designation, Novogene has been forced to implement substantial reductions to its U.S. workforce and anticipates further workforce impacts if the Designation remains in effect.

**E. The Designation Is Final Agency Action Subject to Review Under the APA That Has Had Immediate Consequences on Novogene**

88. The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The Department is an "agency" within the meaning of the APA, *id.* §§ 551(1), 701(b)(1), and a person "adversely affected or aggrieved by agency action" is entitled to judicial review, *id.* § 702.

89. The Designation is final agency action. Agency action is final where it (1) "mark[s] the consummation of the agency's decisionmaking process" and (2) is one "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted). Both conditions are met. The Report states that "the Secretary of War determines that Novogene is a Chinese military company," (Report at 5, 8), and the Department published that determination on June 8, 2026, which appeared

in the Federal Register on June 10, 2026. 91 Fed. Reg. 35189. Nothing about the determination is tentative or interlocutory.

90. The Designation took legal effect immediately upon publication and continues to impose concrete legal consequences. Since June 30, 2026, Section 805(a)(1)(A) of the FY2024 NDAA has barred the Department from entering into, renewing, or extending procurement contracts with Novogene. The Designation also triggers the funding prohibition in Section 536 of the Further Consolidated Appropriations Act of 2024 and renders Novogene a "biotechnology company of concern" under the BIOSECURE Act. *See supra* ¶¶ 41-44.

91. Although courts afford deference to agency determinations implicating national security, they retain an important role in "ensuring that agencies have engaged in reasoned decisionmaking." *Xiaomi*, 2021 WL 950144, at *4 (quoting *Judulang v. Holder*, 565 U.S. 42, 53 (2011)). Applying that principle to a Section 1260H designation, the Department must "accurately characterize" a company's role and "explain why the resulting relationship is sufficiently close." *WuXi AppTec*, 2026 WL 2279624, at *9. Deference does not permit a court to "supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## CLAIMS FOR RELIEF

### COUNT I: Violation of the Due Process Clause of the Fifth Amendment and the APA, 5 U.S.C. § 706(2)(B) (Against All Defendants)

92. Novogene realleges and incorporates by reference the allegations contained in the preceding paragraphs.

93. The Fifth Amendment of the U.S. Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law[.]" U.S. Const. amend. V. At a

minimum, the Due Process Clause of the Fifth Amendment requires notice and "the opportunity to be heard" "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976).

94. The APA requires a reviewing court to set aside agency action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

95. As alleged above, Novogene Co., as a foreign entity that has established substantial connections to the United States, is entitled to the protections of the Due Process Clause. *See Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 201-03 (D.C. Cir. 2001). Novogene Co.'s U.S. subsidiary, Novogene USA, is a Delaware corporation that employs approximately 180 people in the United States, maintains an office in Sacramento, California, operates sequencing centers in Sacramento and in Beaverton, Oregon, and serves leading U.S. research institutions. *See supra* ¶¶ 52-55. Novogene USA, as a domestic corporation, is independently entitled to the protections of the Due Process Clause. The Report itself acknowledges that "Novogene operates directly in the United States through a U.S.-based subsidiary and U.S.-based gene sequencing laboratories." (Report at 8-9).

96. The Designation deprives Novogene of a constitutionally protected liberty interest under the stigma-plus doctrine. *See Hesai*, 186 F.4th at 877-78. Under that doctrine, "'in addition to reputational harm' a plaintiff must show that either '(1) the government has deprived [the plaintiff] of some benefit to which [it has] a legal right' or (2) the government-imposed stigma is so severe that it 'broadly precludes' [the plaintiff] from pursuing 'a chosen trade or business.'" *Id.* (quoting *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 121 (D.C. Cir. 2010)).

97. Novogene has suffered significant reputational harm as a result of the Designation. It publicly labels Novogene as a "Chinese military company" and publishes that label in the

Federal Register, as Section 1260H(b)(2) requires. That label "can be a blow to a company's reputation." *Id.* at 878. The Designation has in fact caused Novogene serious reputational injury, as alleged above.

98. Novogene has been deprived of a benefit to which it has a legal right—the ability to be considered for government contracts. By operation of federal law, the Designation automatically renders Novogene ineligible for Department of Defense procurement contracts, Department of Homeland Security contracts, grants, loans, and guarantees, and those statutory exclusions deprive Novogene of "the right to be considered for government contracts in common with all other persons." *Id.* (quoting *Gen. Elec.*, 610 F.3d at 121).

99. Novogene wishes to be considered for such government contracts and has been disqualified by virtue of the listing. *See id.* at 878-79.

100. The stigma imposed by the Designation is causing U.S. customers that rely on federal funding to terminate or suspend their relationships with Novogene, and threatens to broadly preclude Novogene from pursuing its chosen business of providing genomic sequencing services in the United States. *See supra* ¶¶ 78-84.

101. The Designation also deprives Novogene of constitutionally protected property interests, including its interests in its existing contractual relationships with United States customers and counterparties and in conducting its lawful business in the United States free of unlawful government action.

102. Because the Designation implicates protected liberty and property interests, the Constitution required Defendants, before finalizing the Designation, to (i) notify Novogene of the impending designation, (ii) disclose the unclassified materials on which they intended to rely, and

(iii) afford Novogene an opportunity to rebut those materials or otherwise negate the basis for designation. *See Hesai*, 186 F.4th at 879-80 (collecting cases).

103. Novogene received no notice that the Department intended to designate it, none of the materials the Department relied on, and no opportunity to respond to the Report. Novogene had never previously been officially designated under Section 1260H and Novogene did not receive the Department's Report until after the Designation was published.

104. The Department's post-designation reconsideration process does not satisfy the Constitution's due process requirement. Access to a summary memorandum and an opportunity to send an email to an anonymous address after the decision is final is inadequate. *Id.* at 880. Nor did any exigent circumstances excuse pre-deprivation process. All of the conduct on which the Department relies is years old, the Department appears to have decided to list Novogene by February 13, 2026, at the latest, and the Department then waited at least four more months—for reasons that had nothing to do with Novogene—without ever providing Novogene the unclassified record on which it intended to rely.

105. Defendants bear the burden of showing that their failure to provide pre-designation process was harmless, and they cannot carry it. Where, as here, an agency provides no process at all, the error "cannot be considered harmless if there is any uncertainty at all as to the effect of that failure." *Id.* at 881 (quoting *Sprint Corp. v. FCC*, 315 F.3d 369, 376 (D.C. Cir. 2003)).

106. Novogene is not required to identify what evidence it would have submitted or to show that the outcome would have been different. *Id.* However, among other things, had Defendants provided notice and access to the unclassified materials on which they intended to rely, Novogene would have presented the information it later provided in its removal request, which

directly rebuts each basis for the Designation, and would have demonstrated that the sources cited in the Report do not support the propositions for which the Report cites them. *See supra* ¶¶ 72-77.

107. While the Department could have ascertained this information, it was plainly not before the Department when it finalized the Designation, and Defendants gave Novogene no opportunity to submit it. Defendants cannot rely on the absence of that information from the record to establish that their failure to provide process was harmless. Without pre-designation process, Novogene was "unable to *respond* to the unclassified evidence the Secretary intended to rely upon and tailor its arguments accordingly, before the Secretary made a final decision." *Hesai*, 186 F.4th at 881 (emphasis in original).

108. Defendants' violation of the Due Process Clause is causing and will continue to cause irreparable harm to Novogene and to third parties, including Novogene's U.S. employees and its U.S. academic and research customers. By designating Novogene without affording the constitutionally required notice and opportunity to respond, Defendants acted contrary to constitutional right and contrary to law, and the Designation must therefore be set aside under 5 U.S.C. § 706(2)(B).

109. Because Defendants imposed the Designation without any of the process the Constitution requires, the Designation has no lawful foundation. The appropriate remedy, both pending final resolution and at final judgment, is to restore Novogene to its status before June 8, 2026, when it had never appeared on the Section 1260H List, by setting aside the Designation and ordering Novogene's removal.

**COUNT II: The Designation of Novogene as a CMC Violates the APA as Arbitrary and Capricious and in Excess of Statutory Authority, 5 U.S.C. § 706(2)(A), (C)**
**(Against All Defendants)**

110. Novogene realleges and incorporates by reference the allegations contained in the preceding paragraphs.

111. Each of the Defendants is subject to the requirements of the APA.

112. Defendants' Designation of Novogene as a CMC constitutes final agency action that is reviewable by this Court and "for which there is no other adequate remedy." 5 U.S.C. § 704.

113. Novogene has no adequate or available administrative remedy; in the alternative, any further effort to obtain an administrative remedy would be futile.

114. The APA requires a reviewing court to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

115. Agency action is arbitrary and capricious where the agency "entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency." *State Farm*, 463 U.S. at 43. A court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.*

116. As explained in detail above, Defendants' Designation of Novogene is arbitrary and capricious and in excess of statutory authority because Novogene is not "directly or indirectly owned by" SASAC or "affiliated with" MIIT or the PLA, and does not otherwise fit any of the categories listed by Section 1260H for qualifying as a "Chinese military company."

117. The Department's Designation rests on allegations that Novogene is: (1) "indirectly owned by SASAC of the State Council because a SASAC-owned state-owned enterprise (SOE)

has an ownership interest in the company;" (2) "indirectly affiliated with MIIT through MIIT's designation of a Novogene subsidiary as a 'Little Giant;'" and (3) "indirectly affiliated with PLA through a contract with a PLA-affiliated university hospital." All three alleged bases are arbitrary, capricious, and in excess of statutory authority for multiple reasons, including but not limited to:

i. The Department failed to examine the relevant, publicly available data, conduct a reasonable investigation to predicate the Designation, and articulate a satisfactory explanation showing a rational connection between the facts found and the conclusion reached.

ii. The Department designated Novogene as a CMC when it does not meet the statutory requirements under Section 1260H. This is because, among other reasons, Novogene is not indirectly owned by SASAC and not affiliated with MIIT or the PLA.

iii. The Department relied on a stale equity figure, failed to articulate a reasoned basis for concluding that a minority, non-controlling equity stake of approximately 1% is sufficient to constitute ownership under Section 1260H, and failed to provide any evidence of control by SASAC over Novogene. Ownership under Section 1260H requires "some level of control, not just mere possession of . . . equity." *WuXi AppTec*, 2026 WL 2279624, at *8 (quoting *SZ DJI Tech. Co. v. U.S. Dep't of Def.*, 2025 WL 2761210, at *19-20 (D.D.C. Sept. 26, 2025)). By the Report's own account, SASAC holds no interest in Novogene; the stake belongs to SDIC, a separate company, and is held through a further intermediary, and the Report does not claim that SDIC holds a board seat, exercises voting or veto rights, or directs any aspect of Novogene's management or operations. The Report's only

explanation—that Chinese companies are generally subject to government control and must cooperate with the government—says nothing about Novogene in particular and would apply to every company in China. The Department never explains why it singled out Novogene from the many companies in which a SASAC-owned enterprise holds a passive minority position.

iv. The Department likewise failed to articulate a reasoned basis for why receipt of a single award conferred on a Novogene subsidiary—one of 59 Little Giant awards granted by the Tianjin Municipal Bureau of Industry and Information Technology on the same day, and one of hundreds granted each year—is sufficient evidence of a "close formal association" with MIIT under Section 1260H. The award came from a local body, not MIIT, and the Report identifies no dealings between any Novogene entity and MIIT, and never explains why the award makes Novogene, but not the other recipients, a Chinese military company. The Department not only failed to identify what benefits Novogene allegedly received following the award, it failed to explain how any such benefits would create a close association with MIIT, and it relied on sources that do not support the propositions for which they are cited. The Department further failed to explain how a designation conferred over three years ago—which expired on June 30, 2026—can establish a present affiliation with MIIT. Section 1260H is "written in the present tense," and evidence of an affiliation in "the recent past" does not show that a company "continues to be 'affiliated with'" a listed entity. *SZ DJI Tech Co.*, 2025 WL 2761210, at *11, *13. Even assuming *arguendo* the Little Giant designation was sufficient to establish an indirect affiliation with MIIT at the time of the Designation (and it was not), it is

unlawful to maintain the Designation on this basis, as Defendants' own Report explicitly acknowledges the three-year term.

v. The Department failed to explain how a single, publicly bid contract executed in 2024 representing about 0.0075% of Novogene Co.'s total 2024 revenue establishes a present, "close" association with the PLA. The PLA is not a party to that contract; the counterparty is a university. Moreover, the Report identifies no dealing between Novogene and the PLA itself, no PLA role in Novogene's ownership, management, or operations, and no military application of the testing. Under the Department's logic, every vendor that won an open tender from a military-affiliated hospital or university would be a Chinese military company. *Cf. WuXi AppTec*, 2026 WL 2279624, at *9. It further failed to explain how a contract for "semen protein profile testing" bears any connection to the statutory purpose of Section 1260H.

vi. The Report misstates the sources on which it relies, including by describing benefits its source says are "typically" provided as "guaranteed," and by citing a source concerning a different company for the proposition that Novogene fits within China's military-civil fusion doctrine. An agency acts arbitrarily when it "offers inaccurate or unreasoned justifications" for its decision. *WuXi AppTec*, 2026 WL 2279624, at *10 (quoting *Env't Def. Fund v. EPA*, 922 F.3d 446, 454 (D.C. Cir. 2019)).

vii. The Designation was the result of a pre-ordained process that involved political considerations and other improper bases.

118. The Designation also exceeds Defendants' statutory authority. Two of the three bases for the Designation rest on Novogene's alleged "indirect affiliation" with MIIT and the PLA.

But Section 1260H reaches entities "directly or indirectly owned by, controlled by, or beneficially owned by" a covered organ, or "affiliated with" one. § 1260H(g)(2)(B)(i)(I). As a matter of text and grammar, "directly or indirectly" modifies only the ownership and control terms, not "affiliated with," and the concept of "indirect affiliation" is redundant with the statutory definition of affiliation as "close formal or informal association." *See WuXi AppTec*, 2026 WL 2279624, at *8 ("[I]t is questionable whether 'indirect affiliation' tracks the statute at all."). The Report never finds that Novogene's relationship with MIIT or the PLA is "close." It substitutes the word "indirect" for the closeness finding the statute requires, and the Department cannot supply that missing finding in litigation. *See State Farm*, 463 U.S. at 43. The Department therefore lacked authority to designate Novogene on that basis.

119. Defendants' reliance on the Little Giant award and the Army Medical University contract also exceeds their statutory authority because neither establishes a "close formal or informal association" under any reading that gives the word "close" operative content. *See supra* ¶¶ 23-26. Under a control-based or comparably limited reading, consistent with *Luokung*, *Xiaomi*, and 32 C.F.R. §§ 117.3 and 232.3, nothing in the Report suggests that MIIT or the PLA controls or directs Novogene, or stands in any comparably close relationship with it. A lapsed industrial-policy recognition conferred on a subsidiary, and a single, publicly bid, roughly $21,000 testing contract that may never have been performed, do not come close.

120. In addition, Section 1260H's structure confirms that the Department may not rely on the Little Giant award to establish affiliation with MIIT. Congress expressly identified selection as a "Little Giant" as a potential basis for the military-civil fusion contributor prong in Section 1260H(g)(3)(A), and conditioned it on the entity "knowingly receiving assistance" in connection with Chinese military industrial planning. Congress did not identify Little Giant selection as a

basis for ownership, control, or affiliation under Section 1260H(g)(2)(B)(i)(I). Having specified where, and under what conditions, Little Giant selection is relevant, Congress foreclosed the Department from repurposing the same selection to establish "affiliation with MIIT" under the separate ownership/affiliation prong without satisfying the conditions Congress attached to it. Were it otherwise, every Little Giant recipient would automatically be "affiliated with" MIIT, and the limited Little Giant criterion in Section 1260H(g)(3)(A) would be surplusage.

121. Defendants' unlawful acts are causing and will continue to cause irreparable harm to Plaintiffs and to third parties, including Novogene's U.S. employees and its U.S. academic and research customers. Plaintiffs have no adequate alternative to review under the APA.

**COUNT III: Defendants Failed to Observe the Procedures Required by Law in Designating Novogene as a CMC in Violation of the APA, 5 U.S.C. § 706(2)(D)
(Against All Defendants)**

122. Novogene realleges and incorporates by reference the allegations contained in the preceding paragraphs.

123. The APA requires the reviewing court to set aside agency action that is made "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

124. Section 1260H requires Defendants to submit to Congress a list of each entity identified as a CMC, including a justification for adding any entity to the List. Section 1260H(b)(1). Defendants are further required to make revisions to the List "based on the latest information available," *id.* § 1260H(b)(3), and to establish "reasonable procedures" to implement Section 1260H, *id.* § 1260H(e).

125. Defendants failed to observe procedures required by law in designating Novogene as a CMC, including by: (a) failing to rely on the latest information available, including information concerning SDIC's current shareholding and the impending (and now completed) June

30, 2026 expiration of the Little Giant recognition; (b) failing to provide a justification that addresses the statutory criteria; and (c) failing to implement and abide by reasonable procedures, as required by Section 1260H(e), the U.S. Constitution, and the APA, including by designating Novogene without notice or any opportunity to respond. Procedures that omit the pre-deprivation process the Constitution requires are not reasonable under any reading.

126. Defendants' unlawful acts are causing and will continue to cause irreparable harm to Novogene and to third parties, including its U.S. employees and its U.S. academic and research customers.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

1. Declare that Defendants violated Novogene's rights under the APA and the Due Process Clause of the Fifth Amendment of the U.S. Constitution;

2. Issue an order holding unlawful and setting aside the Designation;

3. Preliminarily enjoin Defendants, pending final resolution of this action, by (a) setting aside the Designation and ordering Defendants to remove Novogene from the Section 1260H List, or, in the alternative, (b) enjoining Defendants from enforcing, implementing, or otherwise giving effect to the Designation;

4. Permanently enjoin Defendants from enforcing, implementing, or otherwise giving effect to the Designation;

5. Order Defendants to remove Novogene from the Section 1260H List;

6. Award Novogene its costs and reasonable attorneys' fees; and

7. Grant any further relief that this Court may deem just and proper.

DATED: November 3, 2026

/s/ *Brian J. Fleming*
Brian J. Fleming (D.C. Bar No. 974889)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 429-8158
bfleming@steptoe.com

Michael G. Scavelli
(*pro hac vice* forthcoming)
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 378-7538
mscavelli@steptoe.com